# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| VICTORIA MIRANDA | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | NO. 18-694 |
| | : | |
| NANCY A. BERRYHILL | : | |
| ACTING COMMISSIONER | : | |
| OF SOCIAL SECURITY | : | |

**KEARNEY, J.**                                                                    **August 23, 2018**

## MEMORANDUM

Victoria Miranda asks we review the Social Security Commissioner's denial of Supplemental Security Income disability benefits. Administrative Law Judge ("ALJ") Frederick Timm weighed the evidence presented and issued an extensive decision explaining why he denied benefits, a ruling affirmed by the Appeals Council. Ms. Miranda then sought our review of ALJ Timm's decision. She alleges ALJ Timm discounted all professional opinions given on her mental condition, instead forming an ungrounded independent assessment to deny her request. We cannot revisit the credibility determinations or allow our views of Mr. Miranda's real challenges to alter the record especially when the Administrative Law Judge based his detailed findings on substantial evidence. After careful review, we find the Administrative Law Judge's factual findings are supported by substantial evidence and deny Ms. Miranda's request for review.

## I.   Background

Ms. Miranda is 43 years old with a high school diploma.[1]  She has not earned income since 2005.[2]  She lives with four of her children.[3]  She filed for Supplemental Security Income on July 28, 2014.[4]  Ms. Miranda cites unusual curvature of the spine, restless leg syndrome, panic disorder, post-traumatic stress disorder, and anxiety as the causes for disability.[5]  The Social Security Administration denied her claim on December 31, 2014, and she filed for a hearing on January 12, 2015.[6]

### A. Evidence presented before ALJ Timm.

Ms. Miranda testified before ALJ Timm on October 17, 2016.[7]  She testified she is separated from her husband and living with her mother and four of her five children.[8]  Her panic attacks started around 2006 while working at Christopher's Bakery and Café.[9]  She also testified to neck and back pain and has been diagnosed with scoliosis.[10]  Ms. Miranda sees a therapist weekly since 2009 and a psychiatrist monthly.[11]  She suffers anxiety, bipolar disorder, and depression, in addition to panic attacks.[12]  On an average day, Ms. Miranda will drop off and pick up her kids from school with her car and watch TV in between.[13]  She suffers from memory and attention problems, and her nervousness prevents her from working.[14]  She testified she can only walk for 15 to 20 minutes at a time before her legs start swelling.[15]

Vocational expert Patricia Scott testified at the hearing.[16]  Based on her past experience and physical and mental limitations, Ms. Scott believed Ms. Miranda could work as a bottle label inspector, lens polisher, or retail trade ticketer/marker.[17]  On examination by Ms. Miranda's attorney, Ms. Scott testified employees would have discretion to fire an employee who misses four days for each month of work.[18]

ALJ Timm also reviewed records from: (1) Dr. Usha B. Desai who treated Ms. Miranda and completed a physical Residual Functional Capacity examination of her; (2) Mr. Gary Levine who treated Ms. Miranda as her therapist/social worker and completed a mental health RFC assessment; (3) Dr. Joseph Primavera who conducted an in-person consultative examination of Ms. Miranda and assessed her mental functioning capacity; (4) Dr. Kathleen Mullins who conducted an in-person consultative examination and assessed her physical capabilities; and, (5) Dr. James Vizza, the State agency non-examining source, who assessed Ms. Miranda's mental and physical functioning for her RFC assessment.

**B. ALJ Timm's decision.**

In applying the five-step analysis, ALJ Timm concluded Ms. Miranda does not suffer from a disability within the meaning of the Social Security Act on January 26, 2017.[19]

ALJ Timm found Ms. Miranda not substantially gainfully employed at step one, as she had last earned income in 2006.[20] ALJ Timm found several severe impairments at step two, including unusual curvature of the spine, restless leg syndrome, panic disorder without agoraphobia, and post-traumatic stress disorder.[21] ALJ Timm did not find obesity and intermittent lower extremity edema to be severe enough impairments to limit her work activities.[22]

At step three, ALJ Timm did not find these impairments to be a disability.[23] ALJ Timm found Ms. Miranda's back impairments did not meet any listings. For her mental impairments to meet the listing for disability, Ms. Miranda must have either an one extreme limitation or two marked limitations in the four categories of mental functioning, (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt and manage oneself.

3

In evaluations Ms. Miranda's understanding, remembering, or applying information, ALJ Timm concluded Ms. Miranda had a moderate limitation because she reported issues with understanding, memory, completing tasks, following written instructions, and handling changes to her routine. ALJ Timm found her limitation does not reach the marked level because she helps her kindergarden-aged son with homework, did not need special education services high school, and she reported to consultative examiner, Dr. Joseph Primavera, she maintains her home, shopping, manages her money, and can drive.[24] ALJ Timm also noted Ms. Miranda's mental health treatment notes also note she is good at managing her household finances and she is currently working on techniques to deal with her mental health symptoms.[25]

In interacting with others, ALJ Timm concluded Ms. Miranda has a moderate limitation because she reported anxiety and she does not like spending time with others, does not like crowds, and has issues getting along with other people, as well as anxiety about her unsafe neighborhood.[26] ALJ Timm found her limitations did not rise to marked level because she lives with family members, leaves her home daily and alone, shops in stores, and is able to get along with family, friends, and neighbors. ALJ Timm also noted Dr. Primavera found her cooperative, having fair social skills, appropriate eye contact, and adequate speech.[27] He also supported his conclusion with her mental health notes which recorded Ms. Miranda having regular interactions with family, some interactions with friends, and regularly dating.[28]

ALJ Timm concluded Ms. Miranda has a moderate limitation in concentrating, persisting, or maintaining pace, because she has difficulties with focus, memory, concentration, and understanding and estimates she can pay attention for only three minutes at a time.[29] He also noted Dr. Primavera found Ms. Miranda had impaired recent and remote memory skills after his examination.[30] ALJ Timm found her limitation did not rise to a marked level because she is able

4

to manage her money, prepares meals, drives her car, clean her house, and care for her children with assistance from her mother.[31]

In adapting or managing oneself, ALJ Timm concluded Ms. Miranda has a moderate limitation based on her ongoing issues with anxiety, nervousness, and difficulty handling stress and changes to her routine.[32] ALJ Timm found her limitation did not rise to a marked level because Ms. Miranda lives with and cares for her children, manages her money, can go out alone, and shops in stores.[33] ALJ Timm also relied on her mental health treatment notes where Ms. Miranda reported ongoing family and financial stress but she felt stable through her medication, and using techniques and insights learned through therapy to manage.[34]

AJL Timm concluded Ms. Miranda did not have a mental disability because he did not find her to have an extreme limitation in one or a marked limitation in two of the four categories of mental functioning.

At step four, ALJ Timm found Ms. Miranda capable of light work except in an eight hour workday, she can sit for six hours and stand or walk for a total of only two hours. Ms. Miranda can perform occasional postural activities but can never operate foot controls, use ladders, or work in extreme cold.[35] She must also avoid concentrated exposure to extreme cold.[36] She is limited to performance of unskilled tasks that are goal-oriented rather than production-paced tasks.[37] Ms. Miranda can tolerate occasional interaction with supervisors and co-workers but no significant interaction with the general public and requires a stable workplace, meaning one with few, if any, changes in work setting, processes, or tools.[38]

In formulating Ms. Miranda's RFC, ALJ Timm gave little weight to Dr. Desai's opinions on Ms. Miranda's physical limitations because her assessment of serious limitations is inconsistent with the normal or minimal findings in Ms. Miranda's treatment records.[39] ALJ

Timm also noted there is no record Dr. Desai evaluated Ms. Miranda's mental health or treated any of her mental health conditions.

Dr. James Vizza, a non-examining source, opined Ms. Miranda had a moderate limitation in each of the four mental functioning categories and found she is able to "meet the basic demands of competitive work on a sustained basis despite" her limitations.[40] ALJ Timm gave partial weight to Dr. Vizza because as a State agency consultant, he is expert in medical record review and disability program rules and his opinion is "generally consistent with the minimal mental health records" available to him at the time, the "minimal positive findings" from Dr. Primavera's consultative examination, and Ms. Miranda's self-reported interactions and activities.[41]

ALJ Timm assigned partial weight to the consultative examiners, Dr. Primavera and Dr. Mullin because while both examined Ms. Miranda in person, "their functional assessments appear to be overestimates of [her] limitations that were based largely on her subjective symptoms complaints rather than the minimal objective minimal objective findings noted during the examinations." [42] In particular, ALJ Timm noted Dr. Primavera found Ms. Miranda to have "appropriate eye contact, coherent and goal directed thought processes, normal thought content, depressed and anxious affect, dysthymic mood, full orientation, impaired memory skills, and good insight and judgment."[43]

ALJ Timm gave little weight to Mr. Levine's mental assessment because he is a social worker and not an acceptable medication source. He also assigned it little weight because Mr. Levine's assessment of marked and extreme limitations is inconsistent with his treatment records and Ms. Miranda's own reports and testimony showing an active lifestyle and overall improvement and stability with her mental conditions through treatment.

6

ALJ Timm also found Mr. Levine's marked and extreme limitations inconsistent with her consistent Global Assessment of Functioning ("GAF") score of 61 which represents mild symptoms or functional difficulties. ALJ Timm also then assigned little weight to Ms. Miranda's GAF scores because they only measured Ms. Miranda's limitations as "precise moments" and are not "detailed assessments" of her ongoing limitations.[44]

ALJ Timm concluded his RFC determination is supported by "mental health records documenting [Ms. Miranda's] symptoms complaints but also her repeated reports of symptom improvement and stability through medication and therapy sessions; by the consultative examination reports documenting minimal findings on clinical examinations; and by [Ms. Miranda's] own statements in the record regarding her ongoing high level of regular activities and interactions despite any symptoms related to her impairments."[45]

At step five, ALJ Timm found Ms. Miranda unable to perform her past work, but found other unskilled jobs available to her in the national economy.[46]

Ms. Miranda appealed and the Appeals Council affirmed ALJ Timm's decision and denied further review.[47]

**II. Analysis**

Ms. Miranda timely filed a request for review in this Court arguing ALJ Timm failed to account for all professional opinions as to her mental condition in formulating his RFC.[48] Nancy A. Berryhill, acting Commissioner of Social Security, argues ALJ Timm properly concluded Ms. Miranda did not establish disability and followed governing regulations in evaluating the opinion evidence.[49]

The ALJ must determine whether the claimant is disabled within the meaning of the Social Security Act. Under Title II of the Act, a person who has contributed to the program, and

7

who suffers a physical or mental disability, is afforded insurance benefits.[50] A disabled person may also be entitled to supplemental security income under Title XVI of the Act.[51] A disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.[52] The disability must be severe enough to preclude gainful work in the national economy.[53]

The Commissioner applies a five-step evaluation to determine if a claimant is disabled.[54] If the Commissioner finds disability or non-disability at any step during the analysis, the Commissioner will end the analysis.[55] Under step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity.[56] If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two and is required to determine whether the claimant is suffering from a severe impairment or combination of impairments.[57] Under step three, if the claimant's impairments are severe, the Commissioner compares the impairments to a list of impairments presumed severe enough to preclude gainful employment.[58] If claimant's impairments or its equivalent matches a listed impairment, the claimant is presumed disabled.[59] If the claimant's impairments do not match impairments on the list, the Commissioner proceeds to step four, where the Commissioner determines the claimant's residual functional capacity.[60] A claimant's residual functional capacity is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[61] In step five, if the claimant is unable to return to past work, the Commissioner must prove "there are other jobs existing in significant numbers in the national economy which claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity."[62]

8

## A. Substantial evidence supports ALJ Timm's RFC determination.

Ms. Miranda argues ALJ Timm's RFC determination as to her mental limitations is not supported by substantial evidence because ALJ Timm (1) "inappropriate[ly]" discounted examining sources in his RFC assessment; and, (2) "mischaracteriz[ed] the evidence" in his conclusion Ms. Miranda is only moderately limited in her mental limitations at Step Three and, based on this "inadequate" analysis, the RFC should have a greater restriction of Ms. Miranda's ability to deal with stress.[63]

Our review of ALJ Timm's decision is deferential; his findings of fact are conclusive if supported by substantial evidence.[64] Substantial evidence must be "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."[65] It is evidence where a "reasonable mind might accept as adequate to support a conclusion."[66] We review the record as a whole to determine if substantial evidence supports ALJ Timm, "mindful" we cannot substitute our judgment for his conclusion.[67]

### 1. Substantial evidence supports ALJ Timm's decision to give partial or no weight to Ms. Miranda's examining source assessments.

Ms. Miranda argues ALJ Timm's RFC is not supported by substantial evidence because he improperly discounted the opinions of her examining sources, Dr. Primavera and Dr. Mullins. Ms. Miranda also argues ALJ Timm erred in assigning little weight to Mr. Levine's assessment as inconsistent with her GAF scores then also afforded little weight to her GAF scores.

"[ALJ Timm]—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."[68] "Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, 'the law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of

9

functional capacity."[69] A physician's opinion may be discredited if it relies mostly on the claimant's own accounts of symptoms.[70]

ALJ Timm's decision to assign partial weight to Dr. Primavera's opinion is supported by substantial evidence. ALJ Timm acknowledged Dr. Primavera examined Ms. Miranda in person but found he based his assessment of marked and moderate limitations on her subjective complaints rather than his objective findings she had impaired attention, concentration, and memory skills based on his examination.[71] ALJ Timm reasonably based his conclusion on Dr. Primavera's positive findings Ms. Miranda has average cognitive functioning, good insight, good judgment, cooperative, and good social skills.[72]

ALJ Timm's decision to give partial weight to Dr. Mullins' diagnosis of "anxiety/depression" is supported by the record because he concluded it is based on Ms. Miranda's subjective complaints rather than Dr. Mullins' examination where Ms. Miranda appeared oriented, appropriately dressed, and had good eye contact with no evidence of hallucinations, delusions, impaired judgment, or significant memory impairment.[73]

ALJ Timm's decision to accord little weight to Mr. Levine's medical assessment is supported by substantial evidence. A social worker is not an "acceptable medical source."[74] Opinions from unaccepted medical sources will be considered but may not be given weight in the assessment by an ALJ.[75] In March 2015, Mr. Levine assessed Ms. Miranda as having several extreme and marked limitations in understanding and memory, in sustained concentration and persistence, in social interaction, and in adaptation.[76] Mr. Levine did not describe his finding to support each area of assessment, instead stating Ms. Miranda has been a client for many years and his assessments are based on knowledge acquired since her admission.[77] ALJ Timm's conclusion Mr. Levine's marked and extreme assessments are inconsistent with his own

10

treatment notes of Ms. Miranda and her own reports as to her daily activity is supported by the record. Mr. Levine's own treatment notes record Ms. Miranda making improvement with her conditions through techniques learned in therapy, medication, and increased understanding of the root of her anxiety and fears particularly in 2016 after Mr. Levine's assessment of her limitations.[78]

ALJ Timm's decision to assign partial weight to Drs. Primavera and Mullins' assessments and little weight to Mr. Levine's assessment in formulating Ms. Miranda's RFC is supported by substantial evidence in the record.

### 2. ALJ Timm properly characterized the evidence of Ms. Miranda's mental limitations at Step Three.

Ms. Miranda argues ALJ Timm mischaracterized evidence in assessing her limitations in her mental functioning at Step Three and based on this "inadequate" analysis the RFC should have a greater restriction of Ms. Miranda's ability to deal with stress. Ms. Miranda argues ALJ Timm mischaracterized the evidence of her ability to manage her own money, her ability to be around and shop, and her progress in dealing with her mental health issues through medicine and therapy.

The record supports ALJ Timm's conclusion Ms. Miranda is able to manage her own money because she reported to Dr. Primavera she is "able to shop and manage money" and in her mental health treatment records, Mr. Levine notes she "has a demonstrated capacity" to budget money despite her limited income.[79] While Dr. Primavera may have opined Ms. Miranda is unable to manage her own funds because of arithmetic issues, ALJ Timm reasonably assigned his opinion partial weight because it contradicts Ms. Miranda's own testimony and Mr. Levine's notes who treated her the longest.

11

The record also supports ALJ Timm's conclusion Ms. Miranda only has a moderate limitation in social interaction. In her functional report, Ms. Miranda stated she can shop but sometimes gets anxious and can be around people but sometimes gets moody.[80] ALJ Timm reasonably concluded Ms. Miranda only has a moderate limitation because she lives with family, takes her children to school and her mental treatment notes reflect she regularly interacts with family, regularly dates, and has some interactions with friends. ALJ Timm also accounted for her limitation in Ms. Miranda's RFC by limiting her to occasional interaction with supervisors and co-workers but no significant interaction with the general public and requires a stable workplace, meaning one with few, if any, changes in work setting, processes, or tools.[81]

Ms. Miranda also argues ALJ Timm's reliance on improvement in her mental conditions is misplaced because, based on her interpretation of the record, her last recorded visit with Mr. Levine showed two panic attacks a week prompting a bout of excessive drinking.[82] The "diagnostic formulation" which contains these facts appear on her session information from October 6, 2016 but this same language appears in the "diagnostic formulation" section on December 30, 2015 and remains there until March 16, 2016 but does appear in the records from her visits from April 6 to July 18, 2016 meaning the information recorded there is not from her last visit in October 2016.[83] ALJ Timm reasonably relied on Ms. Miranda's treatment notes from Spring and Summer 2016 which record improvement in her mental health issues through treatment and medication.

ALJ Timm properly characterized the evidence of Ms. Miranda's mental functioning limitations at step three and his conclusion of marked limitations in supported by the record as a whole.

## III. Conclusion

We deny Ms. Miranda's Petition for review. ALJ Timm properly considered and weighed the presented medical opinions. His conclusions are based upon substantial evidence in the record. We cannot substitute our view in light of this substantial evidence.

---

[1] ECF Doc. No. 9, Social Security Administrative Record ("R") at 26-27.

[2] R. 17.

[3] R. 20.

[4] R. 186.

[5] R. 17.

[6] R. 15.

[7] R. 35.

[8] R. 40.

[9] R. 41; R. 195.

[10] R. 42-43.

[11] R. 46-47.

[12] R. 47.

[13] R. 49-50.

[14] R. 50-1.

[15] R. 51.

[16] R. 57.

[17] R. 59.

[18] R. 60.

[19] R. 12.

[20] R. 17.

[21] *Id.*

[22] *Id.*

[23] R. 17-19.

[24] R. 18, 50.

[25] R. 18.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] R. 19.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] R. 20.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] R. 25. Because Ms. Miranda only challenges ALJ Timm's RFC based on her mental limitations, we do not detail the findings on her physical limitations.

[40] R. 70.

[41] R. 25.

[42] R. 25-26.

[43] R. 26.

[44] *Id.*

[45] *Id.*

[46] R. 26-28.

[47] R. 1.

[48] ECF Doc. No. 10 at 1.

[49] ECF Doc. No. 12 at 5.

[50] 42 U.S.C. § 423(a)(1)(D).

[51] *Id.* § 1381 *et seq.*

[52] *Id.* § 423(d)(1)(A).

[53] *Id.* § 423(d)(2)(A).

[54] *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004).

[55] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[56] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating finding of non-disability if claimant is engaged in substantial gainful activity).

[57] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (mandating finding of non-disability if claimant's impairments are not severe).

[58] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[59] *Id.*

[60] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv)

[61] *Fargnoli v. Halter* 247 F.3d 34, 40 (3d Cir. 2001).

[62] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999)).

[63] ECF Doc. No. 10 at 9.

[64] *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer*, 186 F.3d at 427).

[65] *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[66] *Id.* (citing *Rutherford*, 777 F.3d at 552).

[67] *Id.* (quoting *Rutherford*, 777 F.3d at 552).

[68] *Chandler v. Commissioner of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)).

[69] *Id.* (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011) and citing 20 C.F.R. § 404.1527(d)(1-2)).

[70] *Morris v. Barnhart*, 78 F. App'x 820, 824-825 (3d Cir. 2003).

[71] R. 304.

[72] R. 303.

[73] R. 312.

[74] 20 C.F.R. § 416.913.

[75] 20 C.F.R. § 416.927(f).

[76] R. 326-27.

[77] R. 327.

[78] *See, e.g.*, R. 447 (on February 8, 2016, where Ms. Miranda reported attending a social outing with her ex-husband were she felt great and "blew off steam" and agreed to a plan to use positive self-statements to avoid the thought processes which cause her to have anxiety and panic attacks); R. 449 (On February 17, 2016, Ms. Miranda is becoming less emotional and more particular in her thinking regarding men and felt empowered by making connections between her current issues with men and her history of abuse and she made "clear she is a competent mother who is not afraid to advocate for her children.); R. 461 (On April 26, 2016, Mr. Levine notes Ms. Miranda is using her mindfulness techniques and only has had one panic attack since their last meeting and he observed her to be more confident and Ms. Miranda was not thinking about her new boyfriend in a "catastrophic way."; R. 466 (On June 8, 2016, Ms. Miranda reported no panic attacks despite being overwhelmed by financial difficulties, issues with two men her life, and her

mother leaving for an extended visit to Texas depriving her of financial and daily assistance with the children); R. 468 (On July 18, 2016, Mr. Levine observed while Ms. Miranda "talk[ed] about a significant problem she remained calm and focused, not like past issues in which she experienced anxiety and panic attacks" and noted to deal with the issue she "presented her strategy with calm assurance and self-confidence. What was missing was her tendency to be anxious and frenetic....").

[79] R. 303-04; 453.

[80] R. 216-17.

[81] R. 20.

[82] ECF Doc. No. 10 at 15 (citing to R. 389-90).

[83] R. 389-90; 440; 442; 444; 446; 448; 450; 452; 454; 456 ("[Ms. Miranda] is very anxious and is drinking to excess recently. She met two men from a dating web site but she took precautions by meeting in a 'safe place.' She has been going out with both men....'").